**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**SOUTHERN FABRICATING COMPANY,
INC.; Southern Sash Sales & Supply
Co., Inc.; Southern Metals Company,
Inc.; Elton H. Darby, and John F. Darby, Defendants-Appellees.**

No. 84–7337.

United States Court of Appeals,
Eleventh Circuit.

July 1, 1985.

Frank W. Donaldson, U.S. Atty., Frank S. James, III, Asst. U.S. Atty., Birmingham, Ala., Leonard Schaitman, Marleigh D. Dover, Marc Johnston, U.S. Dept. of Justice, Civ. Div., Appellate Staff, Washington, D.C., for plaintiff-appellant.

Bradley Arant Rose & White, Thad G. Long, Birmingham, Ala., James D. Hughston, Hughston Hughston Hughston, Tuscumbia, Ala., for defendants-appellees.

Before KRAVITCH and CLARK, Circuit Judges, and PECK *, Senior Circuit Judge.

PER CURIAM:

The United States appeals from an order of the United States District Court for the Northern District of Alabama granting partial summary judgment and dismissing two counts of its complaint against Southern Sash Sales and Supply Company ("Sash"), Southern Fabricating Company ("Fab"), Southern Metals Company ("Southern Metals"), and Elton and John Darby ("the Darbys"). Sash is the parent corporation of both Fab and Southern Metals. At all times relevant to this action, the Darbys were officers and directors of Fab and Sash, as well as controlling shareholders of

* Honorable John W. Peck, U.S. Circuit Judge for     the Sixth Circuit, sitting by designation.

Sash; Fab was a wholly-owned subsidiary of Sash.

Fab was a manufacturer of ammunition box hardware during the Korean and Vietnam conflicts. This hardware was purchased by corporations that had renegotiable contracts with the Department of the Army pursuant to the Renegotiation Act of 1951, 50 U.S.C.App. § 1211 *et seq.* Prior to 1966 and after 1968, Fab's profits were modest. During 1966 through 1968, however, Fab had profits of approximately $5,000,000.00. These included "excessive profits" which Fab was required to eliminate and restore to the United States under the Renegotiation Act. Also between 1966 and 1968, the Board of Directors of Fab declared dividends in excess of $4,000,-000.00 to Sash as well as salaries and bonuses to the Darbys.

In 1972, the Eastern Regional Renegotiation Board commenced proceedings against Fab under the Renegotiation Act. On October 10, 1980, the United States obtained a consent judgment in the Court of Claims against Fab in the amount of $2,212,500.00 for excessive profits earned by Fab between 1966 and 1969. In January 1981, this judgment was registered with the United States District Court for the Northern District of Alabama. After learning that Fab, Sash's subsidiary, was an inactive corporation with limited assets, the United States brought a four-count action against Sash, Fab, Southern Metals and the Darbys, seeking recovery of $2,212,500.00. The complaint alleged that the Darbys, as directors of Fab, caused enormous dividends to be paid to Sash during the years 1966 to 1968, which rendered Fab insolvent and violated both the Renegotiation Act and the priority rights of the United States under 31 U.S.C. § 3713. The United States also sought to recover all salary and bonus payments received by the Darbys from Fab in the years 1966 through 1981 and to set aside an alleged fraudulent conveyance to Southern Metals.

On cross motions for summary judgment, the district court construed Counts I and II of the complaint as "action[s] for money damages brought by the United States ... founded upon any contract" within the meaning of 28 U.S.C. § 2415(a) and relied on the act's six-year statute of limitations to bar a recovery under them. The United States appeals the judgment only as to Count I.

In district court the United States argued that § 2415 did not apply because Count I was predicated on "piercing the corporate veil," an equitable action not governed by that statute's time restrictions. On appeal, however, the United States argues that the district court erroneously failed to address the applicability of § 2415(a) to the enforcement of a consent judgment. The United States claims that Count I is an action to enforce the 1980 consent judgment by "piercing the corporate veil" and is not "founded upon [a] contract" within the meaning of § 2415 because such judgments are not "contracts." The appellees urge that this contention was neither raised in nor considered by the district court and, therefore, may not now be advanced on appeal.

Generally, an appellate court will not consider a legal issue or theory raised for the first time on appeal. *Sanders v. United States,* 740 F.2d 886, 888 (11th Cir.1984). The decision whether to consider such an argument is left to the appellate court's discretion. *Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826, 837 (1976); *Roofing & Sheet Metal Services, Inc. v. La Quinta Motor Inns, Inc.,* 689 F.2d 982, 989 (11th Cir.1982) (quoting *Singleton*). In exercising this discretion, "we will consider an issue not raised in the district court if it involves a pure question of law, and if refusal to consider it would result in a miscarriage of justice." *Id.* at 990; *see Martinez v. Mathews,* 544 F.2d 1233, 1237 (5th Cir.1976).[1] Moreover, "[a]bsent plain error we would not reverse the district court on an issue

**1.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981.

not clearly presented to it for decision." *Nathan Rodgers Construction & Realty Corp. v. City of Saraland,* 676 F.2d 162, 163 (5th Cir. Unit B 1982).[2]

The United States failed to assert in the district court that because Count I was an action to enforce the consent decree, it was not subject to the constraints of § 2415. Consequently, the district court was not "clearly presented" with the issue. We must consider, therefore, whether the district court's use of the limitations period contained in § 2415 would constitute "plain error" had this new contention been clearly before it. Because it is undisputed that § 2415 would not control if the United States' characterization of Count I is correct, *see United States v. Kellum,* 523 F.2d 1284, 1287 (5th Cir.1975) (consent judgment not a "contract" within meaning of § 2415), our analysis focuses on the district court's understanding of Count I.

Count I first enumerates the relevant procedural events leading to the October 1980 consent judgment, and then alleges as follows:

10. During the period 1966 through 1969, and continuing to the present, Southern Fab has been controlled by its parent, Southern Sash, to such a degree that Southern Sash at all times completely dominated the business affairs of Southern Fab.

11. During the period 1966 through 1969, and continuing to the present, Southern Fab was used as a mere extension of Southern Sash, to defeat the creditor rights of the United States.

12. Southern Sash's total domination caused Southern Fab, acting through its officers, John F. Darby and Elton H. Darby, to authorize dividend payments to Southern Sash totaling $4,150,000 during the years 1966 through 1968.

13. These dividend payments, when coupled with the debt owed the United

States under the Renegotiation Act of 1951, were made at a time when Southern Fab was insolvent, or they rendered Southern Fab insolvent when made.

14. The dividend payments violated both the creditor rights of the United States and requirements of the Renegotiation Act of 1951.

15. Wherefore, plaintiff demands judgment against defendant Southern Sash in the amount of $2,212,500, minus applicable tax credits, plus interest and costs.

Record at 4–5. Count II claims that the dividend payments made by Fab to Sash between 1966 and 1968 violated the priority rights of the United States under 31 U.S.C. § 3713. *Id.* at 5–6.

The United States now argues that the district court's explanation for its holding—that an action under the Federal Priorities Statute is in the nature of a quasi-contract—applies only to Count II of the complaint. The government contends that because Count I is not predicated upon the Federal Priorities Statute, the district court erred in concluding that Count I is an action "for money damages brought by the United States." The United States asserts that because Count I sets forth the events leading to the consent judgment and never mentions the Federal Priorities Statute, it is plain on its face that the action is one to enforce a judgment by piercing the corporate veil.

It is not obvious from the complaint that Count I seeks to enforce a consent decree. Not only does the pleading fail to state that it is an execution claim, its references to Fab's insolvency and the "creditor rights of the United States" suggest that it was based on the Federal Priorities Statute which governs insolvent corporations indebted to the government.

On the other hand, the complaint mentions the 1980 consent order and seeks the amount of that judgment rather than the

---

**2.** In *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982), the Eleventh Circuit adopted as precedent all decisions of Unit B of the former Fifth Circuit.

amount of the dividend. In addition, because Count II is clearly based on the Federal Priorities Statute, it would be redundant to similarly characterize Count I. Moreover, the "Plaintiff's Opposition to Defendants' Motion for Summary Judgment and Cross-Motion for Summary Judgment" asserted that "Sash's liability for the judgment against its subsidiary Southern Fab must be determined on the basis of federal common law," Supp. Record at 6, referred to "Sash's liability for the debt owed the United States," *id.* at 5, and concluded that "Sash ... is ... liable for the judgment against Southern Fab." *Id.* at 9. The motion also notes that "counts two and three of the complaint allege violations of the Federal Priorities Statute," *id.* at 20, suggesting that Count I is not brought under that statute. Finally, the United States' argument in the district court that § 2415 does not apply to equitable actions is not wholly inconsistent with its claim that Count I seeks to enforce the judgment because "piercing the corporate veil" is an element of both.

Although the complaint and accompanying arguments are not models of clarity, we conclude that had the United States' contention been unambiguously delineated, it would have been plain error to construe Count I as other than an action to enforce a judgment. Accordingly, in our discretion we may properly consider this theory of recovery. Since there is no dispute that § 2415 does not apply to enforcement actions, we hold that its statute of limitations does not bar the United States' cause of action in Count I. We express no opinion as to whether Count I, as we interpret it, states a claim upon which relief can be granted or whether the facts justify "piercing the corporate veil" between Fab and Sash. These issues have not yet been developed in the district court.

The district court's grant of summary judgment as to Count I is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.