Elizabeth D. DUNCAN, et al.,
Plaintiffs-Appellants,

v.

David B. POYTHRESS, et al.,
Defendants-Appellees.

No. 84–8076.

United States Court of Appeals,
Eleventh Circuit.

Dec. 12, 1985.

Kathleen Kessler, Atlanta, Ga., for plaintiffs-appellants.

Robert J. Winicki, Jacksonville, Fla., for amicus curiae Winicki.

Patrick McKee, Asst. Atty. Gen., Atlanta, Ga., for defendants-appellees.

Before GODBOLD, Chief Judge, RONEY, TJOFLAT, FAY, VANCE, KRAVITCH, JOHNSON, HENDERSON, HATCHETT, ANDERSON and CLARK, Circuit Judges.*

KRAVITCH, Circuit Judge:

Appellant Kathleen Kessler appeals the denial of her application for attorney's fees

* Judge James C. Hill recused himself and did not participate in this decision.

pursuant to 42 U.S.C. § 1988. During the early part of this litigation, Kessler represented plaintiffs Duncan and Stout; later in the litigation, after she was added as a plaintiff, Kessler represented herself. The lower court denied fees for the period in which Kessler represented herself under the theory that a lawyer who appears *pro se* is never entitled to attorney's fees under section 1988. The court denied Kessler fees for the time that she represented the other plaintiffs because it concluded that Kessler did not request such fees in her initial application. Finding that the court below erred in both rulings, we reverse.

## I. BACKGROUND

Plaintiffs brought this suit pursuant to 42 U.S.C. § 1983 claiming that the refusal of state officials to call a special election to fill a position on the Georgia Supreme Court violated their constitutionally protected right to vote.[1] Elizabeth Duncan and Elizabeth Stout were the only two plaintiffs at the time of the filing of the case and were represented by three lawyers: Kathleen Kessler, William Hollberg, and William Rucker. At the beginning of the trial, plaintiffs moved to amend the complaint to have Kessler added as a plaintiff. Plaintiffs did this because they felt it would be important for Kessler to testify on their behalf.[2] The district court granted plaintiffs' motion subject to the condition that Kessler withdraw as co-counsel. Subsequently, Kessler began representing herself as an attorney *pro se* litigant.

Plaintiffs prevailed at trial and on appeal on their section 1983 claim. *Duncan v. Poythress*, 515 F.Supp. 327 (N.D.Ga.), *aff'd*, 657 F.2d 691 (5th Cir. Unit B 1981), *cert. granted*, 455 U.S. 937, 102 S.Ct. 1426, 71 L.Ed.2d 647, *cert. dismissed*, 459 U.S. 1012, 103 S.Ct. 368, 74 L.Ed.2d 504 (1982). The trial court also awarded plaintiffs reasonable attorney's fees pursuant to 42 U.S.C. § 1988. *Id.* at 343. In an out-of-court settlement, defendants agreed to pay attorneys Hollberg and Rucker a total of $128,487 in fees, but refused to pay attorney's fees to Kessler. Kessler then applied to the district court for fees.

Kessler's application for fees and brief in support of that application were filed on behalf of "Kathleen Kessler, plaintiff *pro se.*" These documents requested fees for the entire time Kessler worked on this case, including both the time that she was counsel of record for plaintiffs Duncan and Stout and the time that she represented herself. The application also analyzed all such time according to the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974).[3]

The district court denied Kessler's application for fees because she was a *pro se* litigant. *Duncan v. Poythress*, 572 F.Supp. 776 (N.D.Ga.1983). Kessler moved for reconsideration under the theory that, even if she was not entitled to fees for the time that she represented herself, she could not be denied fees for the time that she represented the other two plaintiffs. The lower court denied Kessler's motion

1. For the complete facts of the underlying action, *see Duncan v. Poythress*, 657 F.2d 691 (5th Cir. Unit B 1981), *cert. granted*, 455 U.S. 937, 102 S.Ct. 1426, 71 L.Ed.2d 647, *cert. dismissed*, 459 U.S. 1012, 103 S.Ct. 368, 74 L.Ed.2d 504 (1982).

2. Specifically, plaintiffs wanted Kessler to testify about her contact with defendant Bowles prior to the initiation of this suit, regarding his resignation.

3. *Johnson* lists the following factors to be utilized in determining the proper amount of attorney's fees for claims under section 1988: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite

to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717–19. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 1937–38, 76 L.Ed.2d 40 (1983).

based upon its finding that she had failed to raise this ground for recovery earlier.

## II. ATTORNEY'S FEES FOR LAWYER PRO SE LITIGANTS

The question before this court is whether attorneys who proceed *pro se* should be treated like other attorneys (prevailing plaintiff's attorney(s) presumptively entitled to fees [4]) or like lay *pro se* litigants (not entitled to fees) for the purposes of section 1988.

The court below denied Kessler's application for fees based on *Cofield v. City of Atlanta*, 648 F.2d 986 (5th Cir. Unit B 1981),[5] in which the court denied fees to the plaintiff, a nonlawyer, who appeared *pro se*.[6] The specific issue of fees for a lawyer appearing *pro se* was not addressed in *Cofield*. *Cazalas v. United States Department of Justice*, 709 F.2d 1051, 1055 n. 8 (5th Cir.1983); *Ehlers v. City of Decatur*, 696 F.2d 1006 (11th Cir.1983) (unpublished opinion). Only one Court of Appeals, the Ninth Circuit, has considered the issue of whether a lawyer litigant proceeding *pro se* is entitled to attorney's fees under section 1988. *Ellis v. Cassidy*, 625 F.2d 227 (9th Cir.1980). The *Ellis* court determined that defendants who were attorneys and who represented themselves were entitled to fees. Although *Ellis* is unlike the present case in that it concerned an attorney *pro se* defendant, the *Ellis* court's reasoning is, in large part, applicable to the present case. Indeed, *Ellis* was cited as persuasive authority in *Rybicki v. State Board of Elections*, 584 F.Supp. 849 (N.D.Ill.1984) (three-judge court) where an attorney *pro se* plaintiff was granted fees under section 1988. *But see Lawrence v. Staats*, 586 F.Supp. 1375 (D.D.C.1984) (attorney *pro se* plaintiff not entitled to fees).[7] Circuit courts are divided as to whether attorney *pro se* litigants are entitled to fees in contexts other than section 1988. *Falcone v. Internal Revenue Service*, 714 F.2d 646 (6th Cir.1983), *cert. denied*, 466 U.S. 908, 104 S.Ct. 1689, 80 L.Ed.2d 162 (1984) (attorney-litigant in Freedom of Information Act (FOIA) suit denied fees); *Cazalas v. United States Department of Justice*, 709 F.2d 1051 (5th Cir.1983) (attorney-litigant entitled to fees in FOIA case); *White v. Arlen Realty and Development Corp.*, 614 F.2d 387 (4th Cir.), *cert. denied*, 447 U.S. 923, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980) (fees denied attorney-litigant in Truth In Lending Act case); *Cuneo v. Rumsfield*, 553 F.2d 1360 (D.C.Cir.1977)

---

**4.** A prevailing plaintiff " 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.' " S.Rep. No. 1011, 94th Cong., 2d Sess. 4, *reprinted in* 1976 U.S.Code Cong. & Ad.News 5908, 5912 (quoting *Newman v. Piggie Park Enterprises*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968)); *Hensley v. Eckerhart*, 103 S.Ct. at 1937.

**5.** The Eleventh Circuit, in *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982), adopted as precedent decisions of the former Fifth Circuit, Unit B, rendered after September 30, 1981.

**6.** A number of other courts have also denied lay *pro se* litigants fees pursuant to section 1988. *E.g., Turman v. Tuttle*, 711 F.2d 148 (10th Cir. 1983); *Pitts v. Vaughn*, 679 F.2d 311 (3d Cir. 1982); *Wright v. Crowell*, 674 F.2d 521 (6th Cir.1982); *Lovell v. Snow*, 637 F.2d 170 (1st Cir.1981); *Davis v. Parratt*, 608 F.2d 717 (8th Cir.1979).

**7.** The *Rybicki* and *Lawrence* courts, with their contrary results, are the only two federal district courts, other than the court below, to explicitly deal with this issue.

In *Durham v. Brock*, 498 F.Supp. 213, 225–26 (M.D.Tenn.1980), *aff'd* 698 F.2d 1218 (6th Cir. 1982), a district court denied fees to an attorney *pro se* litigant who prevailed in his claim that Tennessee's rules regarding advertising by attorneys violated the first amendment. The court, however, did not specifically address the question of whether lawyers who represent themselves are entitled to fees under section 1988; rather, the court used its discretion to deny fees under the particular circumstances of that case. In *Mid-Hudson Legal Services, Inc. v. G & U, Inc.*, 578 F.2d 34 (2nd Cir.1978), the Second Circuit awarded attorney's fees to a legal services corporation office that brought suit on behalf of the corporation and individual lawyers employed by the corporation. The court found that although none of the farm workers, who normally made up the office's clientele, were plaintiffs in the suit, Mid-Hudson Legal Services acted solely on the farm workers' behalf and in pursuance of its own congressional directive to provide legal services to farm workers.

(FOIA attorney-litigant entitled to fees, but nonattorneys also entitled to fees in D.C. Circuit. *Cox v. United States Department of Justice*, 601 F.2d 1 (D.C.Cir.1979)).[8]

The plain language of section 1988 does not preclude an award of fees to a lawyer representing herself. The statute states in pertinent part:

> In any action or proceeding to enforce a provision of [section] ... 1983 ... of this title ... the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs.

Moreover, this court has determined that section 1988 "should be accorded broad interpretation since the statute is remedial in nature." *Williams v. City of Fairburn*, 702 F.2d 973, 976 (11th Cir.1983). Thus, the absence of any express prohibition strongly suggests allowance of a fee award, unless the legislative history provides otherwise. The legislative history of section 1988 does not address this issue.

Absent express language in either the statute itself or its legislative history, we look to the purposes of section 1988 to determine whether granting attorney's fees to attorney *pro se* litigants would further those purposes. Defendants assert, and the lower court found, that Kessler is not entitled to attorney's fees because "section 1988 is designed to assist average citizens who, were it not for the attorney's fees provision, would lack the ability to effectively pursue meritorious complaints." 572

F.Supp. at 778. Although Congress certainly intended section 1988 to help those without the financial resources to hire a lawyer, to the extent that the court below relied on the rationale that section 1988 is *only* intended to help those who cannot otherwise afford legal assistance, such reliance is misplaced. A plaintiff's lawyer is not denied fees under section 1988 merely because the plaintiff is able to pay for a lawyer, *see, e.g., Riddell v. National Democratic Party*, 624 F.2d 539, 543 (5th Cir. 1980);[9] *International Oceanic Enterprises, Inc. v. Menton*, 614 F.2d 502, 503 (5th Cir.1980), or because plaintiff is not actually required to pay his or her lawyer. *See, e.g., Johnson v. University College*, 706 F.2d 1205, 1210 (11th Cir.), *cert. denied*, 464 U.S. 994, 104 S.Ct. 489, 78 L.Ed.2d 684 (1983); *Watkins v. Mobile Housing Board*, 632 F.2d 565, 567 (5th Cir.1980); *Ellis v. Cassidy*, 625 F.2d at 230. Thus, the financial need of the litigant is not the determinative factor in awarding fees under section 1988.[10]

Moreover, contrary to the implication of defendants' argument, the fact that Kessler is a lawyer and therefore can (and did) provide legal representation to herself, does not mean that she does not need section 1988 in order to enable her to pursue a case like the present one. Merely because plaintiff Kessler need not pay an actual fee to attorney Kessler does not mean that she is able to spend the time and pay the over-

---

8. In several other cases involving attorney's fees requests pursuant to various statutes, courts have noted that the prevailing *pro se* plaintiff seeking attorney's fees was not a lawyer. *E.g., Wolfel v. United States*, 711 F.2d 66, 68 (6th Cir.1983); *Owens-El v. Robinson*, 694 F.2d 941, 942 (3d Cir.1982); *Pitts v. Vaughn*, 679 F.2d 311, 313 (3d Cir.1982); *Clarkson v. IRS*, 678 F.2d 1368, 1371 n. 3 (11th Cir.1982); *Barrett v. Bureau of Customs*, 651 F.2d 1087, 1090 (5th Cir. Unit A 1981), *cert. denied*, 455 U.S. 950, 102 S.Ct. 1454, 71 L.Ed.2d 665 (1982); *Crooker v. United States Dept. of Justice*, 632 F.2d 916, 921 (1st Cir.1980); *Hannon v. Security National Bank*, 537 F.2d 327, 328–29 (9th Cir.1976). Thus, these courts, although not confronted with an attorney *pro se* litigant, have recognized that a lawyer is differently situated from a lay litigant for the purposes of a fee award.

9. The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

10. The District of Columbia district court provides a narrower interpretation. In *Lawrence v. Staats*, 586 F.Supp. 1375 (D.D.C.1984), that court focuses on the financial need of the litigant as a prerequisite to fees, concluding that "the law need only provide that litigants with meritorious claims will be compensated for actual funds expended to pay for an attorney's services in order to achieve that goal [meaningful access to the courts]." *Id.* at 1379. We, of course, follow the binding precedent of this circuit cited in the text to the effect that expending funds is not a prerequisite to a fee award.

head involved in this case, absent at least the hope of remuneration. *See Cazalas,* 709 F.2d at 1057.[11] In fact, preclusion of other employment by the attorney is one of the *Johnson* factors. *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d at 718. This factor is no less relevant when the attorney is the section 1983 plaintiff rather than any other person. *See Ellis,* 625 F.2d at 231 ("The appellees [attorney *pro se* defendants] have actually suffered pecuniary loss, since they have been required to take time away from their practices to prepare and defend the suit.");[12] *Rybicki,* 584 F.Supp. at 860 (A *pro se* lawyer "actually suffers a pecuniary loss due to the time lost from the lawyer's practice.").[13] As

Kessler points out, another more general purpose of section 1988 is to encourage private citizens to vindicate important constitutional and congressional policies. *See* S.Rep. No. 1011, 94th Cong., 2d Sess. 2–3, *reprinted in* 1976 U.S.Code Cong. & Ad. News 5908, 5909–10; *Riddell,* 624 F.2d at 543. This is exactly what Kessler and her coplaintiffs did. A fee award is just as necessary to enable plaintiff Kessler to do this as it would be for a nonlawyer.

Defendants also assert that, in the present case, it was not necessary for Kessler to represent herself[14] because the other two plaintiffs' attorneys could have represented Kessler as well with no apprecia-

---

**11.** The lower court, again relying on *Cofield,* determined that *Cazalas* is inapplicable to the present case because it concerned fees under FOIA. *Cofield* found FOIA fee cases inapplicable to the section 1988 context because the "history, language, and purpose of the Freedom of Information Act differ significantly from those of the civil rights statutes...." 648 F.2d at 988. For example, FOIA actions are likely to be brought *pro se,* damages are generally not involved, and fees may be awarded to fulfill a punitive function. *Id.* at 988, n. 4. Both the attorney's fees provision of FOIA and section 1988, however, were enacted as incentives for private individuals to pursue their rights. Thus, these differences do not distinguish the two statutes in terms of the need to compensate attorney *pro se* litigants in order to enable them to pursue such litigation.

**12.** Although the congressional purposes behind awarding attorney's fees to defendants differ from those behind awarding such fees to plaintiffs, both attorney *pro se* plaintiffs and attorney *pro se* defendants are subject to the same pecuniary loss as a result of *pro se* representation in a section 1983 suit.

**13.** This loss is distinguishable from opportunity costs lost to a nonlawyer litigant because the congressional intent behind section 1988 was to provide *legal* services as discussed *infra.*

**14.** Defendants attempt to rely on a different characterization of the facts in another of their arguments. They argue that Kessler "withdrew as counsel and never again appeared as counsel in this case" and thus is not entitled to attorney's fees. Defendants raised this issue for the first time before the *en banc* court. In fact, defendants stated in their brief before the panel that "The Trial Court did not allow Kessler to testify and also represent the plaintiffs, *though she was allowed to represent herself."* (emphasis

added). We will not consider this new, contradictory argument, raised for the first time at the *en banc* level. As we stated recently in *United States v. Southern Fabricating Co.,* 764 F.2d 780, 781 (11th Cir.1985):

> Generally, an appellate court will not consider a legal issue or theory raised for the first time on appeal. *Sanders v. United States,* 740 F.2d 886, 888 (11th Cir.1984). The decision whether to consider such an argument is left to the appellate court's discretion. *Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826, 837 (1976); *Roofing & Sheet Metal Services, Inc. v. La Quinta Motor Inns, Inc.,* 689 F.2d 982, 989 (11th Cir.1982) (quoting *Singleton* ). In exercising this discretion, "we will consider an issue not raised in the district court if it involves a pure question of law, and if refusal to consider it would result in a miscarriage of justice." *Id.* at 990; *see Martinez v. Mathews,* 544 F.2d 1233, 1237 (5th Cir.1976).

In the present case, it is clear beyond doubt that Kessler represented herself for significant periods of time after withdrawing as co-counsel for the other plaintiffs. For example, she filed a separate brief as "Kathleen Kessler, Respondent, *pro se"* before the Supreme Court. No objection was raised by defendants. Moreover, in any event, this issue could only affect the amount of fees to which Kessler is entitled, a question for the district court, and not the significant question of law that this court has determined warrants *en banc* review. We note that our remand to the district court for the determination of the amount of the fee award necessarily will require that the district court make a specific finding as to the stage in the proceeding at which Kessler began representing herself as a lawyer and the length of time involved in such representation. *See supra* note 3.

ble additional effort on their part. The problem of redundant legal services is exactly the type of issue with which the *Johnson* factors are designed to deal. 488 F.2d at 717. The existence of other counsel in the case goes to the amount of fees to which Kessler may be entitled, an issue not before this court, not to her entitlement to fees as an attorney *pro se* litigant.

Defendants' assertions that Kessler is not entitled to fees, either because as a lawyer she has free access to the legal system or because other lawyers were available to represent her, are unpersuasive. Under either of these rationales, had Kessler retained additional counsel to represent her in this litigation, such counsel would not have been entitled to fees under section 1988. Yet, defendants admit that attorney's fees would have been allowed to a lawyer hired by Kessler to represent her. Thus, defendants are asserting the anomalous position that Kessler could have hired any other lawyer besides Kessler and that lawyer would have been entitled to fees. A related anomaly is the fact that anyone else could have hired Kessler to be his or her lawyer and, if that plaintiff had prevailed as Kessler did here, Kessler would have been entitled to fees.

This second anomaly illuminates the distinction between an attorney *pro se* litigant and a lay *pro se* litigant. A lay *pro se* litigant could not be hired by someone else to represent him or her in a section 1983 suit; an attorney *pro se* litigant could be.

As pointed out in *Cofield*, the case relied on by the court below, section 1988 was enacted to · "enable and encourage a wronged person to retain a lawyer." 648 F.2d at 988;[15] *see also Ellis*, 625 F.2d at 231 ("Legal services have actually been performed"); *Rybicki*, 584 F.Supp. at 859 ("The courts [in denying lay *pro se* litigants fees] reason that the principal purpose of § 1988 (to encourage lay persons to retain lawyers in meritorious civil rights cases) is not furthered by compensating a nonlawyer litigant who decides to proceed *pro se*."). The court below echoed these sentiments: "The primary concern of Congress was to increase the level of competence with which such complaints are prosecuted . . . ." 572 F.Supp. at 778–79; *see also Lawrence*, 586 F.Supp. at 1379.

In the case of an attorney *pro se* litigant such as Kessler, this congressional purpose is fulfilled. Kessler utilized a lawyer to pursue her claims; therefore, she utilized the kind of skilled advocate competent to pursue legal claims, as evidenced by a license to practice law, that the framers of section 1988 envisioned. The fact that the lawyer she chose was herself is inconsequential. Thus, although we agree with the court below that section 1988 was not passed solely for the benefit of lawyers,[16] it was passed so that plaintiffs, lay or lawyer, could have legally trained representatives in cases, like the present one, where important constitutional rights are at stake.[17]

---

**15.** The *Cofield* court refers to section 1988's purpose as encouraging legal representation throughout the course of the opinion: "Congress specifically approved the standards established in *Johnson v. Georgia Highway Express* and its legacy, pointing out that '[t]hese cases have resulted in fees which are adequate to *attract competent counsel*, but which do not produce windfalls...' S.Rep. No. 94–1011, 94 Cong.2d Sess. 6, *reprinted in* [1976] U.S.Cong. & Ad.News 5908, 5913." 648 F.2d at 987 (emphasis added); "[i]t is apparent that Congress thought that such people ought to have access to *legal representation*." *Id.* at 988 (emphasis added). The *Cofield* court pointed out that although lawyers are not the only ones *who can be worthy advocates*, the congressional purpose behind section 1988 was to attract those with legal training.

**16.** We do note, however, that another purpose behind section 1988 is to aid lawyers. As we stated recently in *Dowdell v. City of Apopka*, 698 F.2d 1181 (11th Cir.1983): "Attorneys' fees and expenses are awarded not only to make it possible for non-affluent litigants to obtain legal representation, but to *reward* attorneys whose service has benefitted the public interest." *Id.* at 1191 (emphasis in original). *See also Jonas v. Stack*, 758 F.2d 567, 569 (11th Cir.1985) (section 1988 "provides an incentive for both citizens and members of the bar to act as 'private attorneys general' to insure effective enforcement of these civil rights laws") (citing *Dowdell*).

**17.** Defendants also claim that an attorney-client relationship is the prerequisite to a fee award, citing *Gore v. Turner*, 563 F.2d 159 (5th Cir. 1977) where the court stated:

A further distinction between a lay *pro se* and an attorney *pro se* litigant is the fact that a lay *pro se* litigant cannot sell legal services in the open market. Section 1988 case law tells us that the amount of fees a lawyer recovers is not what that lawyer would have actually earned in another case, but rather, what the market value for such services was. *See Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984); *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d at 718. Thus, a federally funded Legal Services Corporation lawyer with the same credentials as a lawyer with a lucrative private practice is awarded the same fee under section 1988. *See, e.g., Johnson v. University College*, 706 F.2d at 1210; *Watkins*, 632 F.2d at 567. The lay litigant's services have no market value as legal services since a lay person cannot sell legal services in the marketplace. In addition, the *Johnson* factors include opportunity costs, 488 F.2d at 718, and such costs would be much more complicated to evaluate for the lay litigant. *See Cazalas*, 709 F.2d at 1057;[18] *Ellis*, 625 F.2d at 231.

Several policy arguments have been raised to support denying fees to attorney *pro se* litigants, none of which we find persuasive. First, it has been claimed that a lawyer representing himself or herself lacks the objectivity necessary to provide a check against groundless or frivolous litigation.[19] As the *Cazalas* court found in regard to FOIA, however, section 1988 was

not enacted to ensure objective representation, but rather, to promote vigorous advocacy. 709 F.2d at 1056. Counsel representing plaintiffs are often committed to a certain social ideology and thus are not totally independent or objective. In addition, a lawyer-litigant, like any other lawyer, only receives compensation if he or she prevails. A groundless case, of course, would not prevail. Moreover, a lawyer who brings a frivolous suit may be liable for defendants' attorney's fees under the standard set out by the Supreme Court in *Christiansberg Garment Company v. E.E.O.C.*, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978) ("a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith").[20] *See also* Fed.R. Civ.P. 11 (lawyer, or party if unrepresented, must sign every pleading, motion, or other paper certifying that, to the best of the signer's knowledge, it is well grounded in fact and warranted by law or a good faith argument to change existing law, and is not brought for any improper purpose; paper signed contrary to the rule subjects lawyer, party, or both, to sanctions including paying other party's expenses, attorney's fees); Fed.R.App.P. 38 (if court of appeals determines that an appeal is frivolous, it may award just dam-

---

The existence of an attorney-client relationship, a status that exists wholly independently of compensation, is all that is required [to qualify for attorney's fees under section 1988]. Congress did not intend that vindication of statutorily guaranteed rights would depend on the private party's economic resources or on the availability of free legal assistance.

*Id.* at 164. The *Gore* court, however, was not considering *pro se* representation, but rather, whether financial need was a prerequisite to an award. The court's comments on the attorney-client relationship were mere dicta.

**18.** Again, the fact that *Cazalas* concerned fees under FOIA does not undermine its authority here because the distinctions between FOIA and section 1988 (see discussion in note 11, *supra* ), do not affect the feasibility of calculating fees for attorney and lay *pro se* litigants.

**19.** Lack of objectivity has been used to support denying attorney's fees to lay *pro se* litigants. *See, e.g., Pitts v. Vaughn*, 679 F.2d 311, 312 (3d Cir.1982). A lawyer, however, unlike a lay litigant, has been trained to distinguish meritorious claims from frivolous ones. *Cf. Barrett v. Bureau of Customs*, 651 F.2d 1087, 1089–90 (5th Cir. Unit A 1981), *cert. denied*, 455 U.S. 950, 102 S.Ct. 1454, 71 L.Ed.2d 665 (1982). *But see Falcone*, 714 F.2d at 647; *White v. Arlen Realty Development Corp.*, 614 F.2d at 388.

**20.** The same standard has been applied to awards of attorney's fees to prevailing defendants under section 1988. *Hughes v. Rowe*, 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980).

ages and single or double costs to the appellee).

■ A second argument against awarding fees to attorney *pro se* litigants stems from the fear that a cottage industry will develop among inactive attorneys who will bring section 1983 cases to support themselves. We think this fear is unfounded. Again, only a prevailing attorney will receive remuneration, and attorneys who bring frivolous suits face numerous sanctions. Because an attorney is compensated according to the *Johnson* factors which include legal experience and reputation, an inactive attorney would be compensated at a low rate. Moreover, if applying section 1988 to lawyers who represent themselves encourages lawyers to search for violations of constitutional and statutory rights and then seek to vindicate those rights, such application is not contrary to the purposes of the statute. *See Dowdell v. City of Apopka,* 698 F.2d 1181, 1189, n. 12 (11th Cir.1983) (section 1988 is designed "to induce and encourage litigation on the theory that litigants acting as 'private attorneys general' may help to enforce important congressional policies"). Finally, in the present case, Kessler tried to avoid litigation by requesting defendants to call a special election. Although not forced into this litigation in the same sense as was the defendant in *Ellis,* Kessler was required to bring suit if she wanted to vindicate her important right of franchise. Thus, we conclude that Kessler is entitled to fees for the period in which she represented herself as an attorney *pro se* litigant.[21]

---

**21.** A further argument made against awarding attorney's fees to attorney *pro se* litigants is that it encourages lawyers to act as both advocate and witness in contravention of the ethical prohibition against lawyers performing such dual roles. *See Rybicki,* 584 F.Supp. at 860–61 (majority opinion); *id.* at 865–66 (Grady, J., dissenting in part and concurring in part). This prohibition is reflected in the ABA Model Code of Professional Responsibility (1980) which states as an "ethical consideration":

EC 5–9 Occasionally a lawyer is called upon to decide in a particular case whether he will be a witness or an advocate. If a lawyer is both counsel and witness, he becomes more easily impeachable for interest and thus may be a less effective witness. Conversely, the opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case. An advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility. The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the case of another, while that of a witness is to state facts objectively.

*See also* EC 5–10, the corresponding "disciplinary rules" DR 5–101 and 5–102, and Model Rules of Professional Conduct Rule 3.7.

Even if Kessler can be said to have violated this ethical canon, it is not apparent why denial of fees is an appropriate sanction. *See Scope,* Model Rules of Professional Conduct (Proposed Final Draft May 30, 1981). Moreover, the rule is inapplicable to an attorney *pro se* litigant. The ethical canons do not prohibit a lawyer from representing himself or herself, *see, e.g., O'Neal v. Bergan,* 452 A.2d 337, 344 (D.C.App. 1982), and logic tells us that such a *pro se* litigant often testifies on his or her own behalf.

In addition, the rationales behind the advocate-witness rule do not apply to the attorney *pro se* litigant. As stated by the Supreme Judicial Court of Massachusetts:

To apply DR 5–102 when the testifying advocate is a litigant in the action miscomprehends the thrust of the rule. DR 5–102 regulates lawyers who would serve as counsel and witness for a party litigant. It does not address that situation in which the lawyer *is* the party litigant. Any perception by the public or determination by a jury that a lawyer litigant has twisted the truth surely would be due to his role as a litigant and not, we would hope, to his occupation as a lawyer. *See International Elecs. Corp. v. Flanger,* 527 F.2d 1288, 1294 (2d Cir.1975). As a party litigant, moreover, a lawyer could represent himself if he so chose.

*Borman v. Borman,* 378 Mass. 775, 393 N.E.2d 847, 856 (1979) (footnote omitted).

Thus, we conclude that the advocate-witness rule is not applicable to the attorney *pro se* litigant. Moreover, in Kessler's case there are additional reasons why the rule is inapplicable. First, a judge was the trier of fact, thus, there was no danger that the trier of fact could not distinguish between testimony and advocacy. Second, Kessler was not put in the "unseemly and ineffective position of arguing her own credibility" because she did not act as an advocate during the course of the trial, rather, such duties were performed by other lawyers. *Cf. Bottaro v. Hatton Associates,* 680 F.2d 895 (2d Cir.1982); *International Elecs. Corp.,* 527 F.2d at 1294.

Finally, under Ethical Consideration 5–10 and Disciplinary Rules 5–101 and 5–102 of the Model Code, a lawyer can testify if, *inter alia,* the testimony relates solely to an uncontested mat-

### III. FEES FOR PERIOD KESSLER REPRESENTED THE OTHER PLAINTIFFS

In its discussion of the merits, the lower court ordered that "plaintiffs shall recover ... all reasonable attorney's fees from the defendants for time spent litigating this action. 42 U.S.C. § 1988." 515 F.Supp. at 343.[22] When defendants refused to pay her for her work, Kessler applied to the court for fees. In her petition for fees, Kessler did not distinguish between time spent representing herself and time spent representing the other plaintiffs. As defendants point out, Kessler did not mention the fact that she represented others as a theory for recovery; rather, she only asserted that "[p]laintiff attorney Kessler, representing herself, may recover attorney's fees."

 The lower court denied Kessler's application for fees based on her position as a *pro se* litigant without commenting on the time that she spent representing the other plaintiffs. Kessler's motion for reconsideration dealt solely with the time that she spent representing the plaintiffs Duncan and Stout. The court below denied this motion, stating that it "has not been informed of the reason Kessler failed to raise previously this issue as to her entitlement to a recovery of fees...." *Duncan v. Poythress*, No. C81–199A, slip op. at 2 (N.D.Ga. Dec. 22, 1983), and that Kessler was now attempting to "raise a different ground for recovery...." *Id.* Although Kessler could have made her fee application clearer, we find that the lower court abused its discretion by using this ambi-

guity to deny Kessler fees for the hours that she represented the other plaintiffs. The court's finding that, in her first application, Kessler did not apply for fees for the time that she represented the other plaintiffs, was clearly erroneous. A fee application need not assert a theory or ground supporting recovery; rather, it need only document the hours spent— which Kessler's application did.[23] This is so, not only because prevailing plaintiffs are presumptively entitled to fees under section 1988,[24] but also because plaintiffs in the present case had already been granted attorney's fees. 515 F.Supp. at 343. Kessler reasonably assumed that the question of fees for the time that she represented the other plaintiffs was not in issue. Thus, Kessler is entitled to fees for the period in which she represented plaintiffs Duncan and Stout.

For the foregoing reasons, the judgment of the district court is REVERSED and this case is REMANDED for a determination of the amount of Kessler's fee award.

GODBOLD, Chief Judge, dissenting:

The court took this case en banc to decide a legal question. It turns out that the case is not a proper vehicle for decision. The facts have not been sufficiently developed for the court to decide the case with assurance of correctness.

I would remand this case to the panel for proper handling of the § 1988 issue, which would entail the parties stipulating to the facts or a remand to the district court for development of an adequate record covering what happened in the district court and

---

ter or the testimony is solely a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony. In the present case, Kessler's brief testimony related solely to whether she had gone to see defendant Bowles on December 14, 1980, to ask him about his resignation, and the fact that he refused to answer Kessler's questions. Plaintiff's counsel did not anticipate that this testimony would be contradicted, and indeed, defendant Bowles did not contest the matter. This testimony was introduced by plaintiffs merely to show the element of knowledge on behalf of defendants.

**22.** The parties were also directed to attempt to resolve the matter of attorney's fees themselves, and were instructed to petition the court for resolution of the matter if they failed to reach agreement. 515 F.Supp. at 343.

**23.** Kessler's application also applied the *Johnson* factors to the time that she represented the other plaintiffs as well as to the time that she represented herself.

**24.** *See* note 4, *supra.*

in the Supreme Court. Without such a record we do not know whether the issue on which we took the case en banc is properly before us.

Establishing Kathleen Kessler's status as attorney for herself, in the district court or in the Supreme Court, or both, is a prerequisite for decision of the attorney fee issue. We do not know with certainty whether Kessler served as attorney for herself in the district court after she withdrew as co-counsel and was added as plaintiff. The parties are in dispute about this. The en banc court does not directly address whether as a matter of fact Kessler filed an appearance for herself in the district court, whether she performed acts as an attorney, whether the district court was aware that she purported to represent herself, or whether the district court, if unaware, would have permitted such representation if made aware.

The court refers to Kessler's having filed a brief for herself pro se before the Supreme Court. We do not know whether that Court labored under the same lack of facts concerning events in the district court that we labor under. Whether the Supreme Court, armed with all the facts, would have permitted Kessler to appear, and whether it might now say that her appearance was proper, are matters to which we do not know the answer.

The court finesses the issue of the stage at which Kessler began representing herself by punting to the district court on remand. See footnote 14. The instruction to the district court, in footnote 14, that it must make a finding as to the stage in the proceeding at which Kessler began representing herself leaves open the possibility that the district court may find that at no time did Kessler ever represent herself in the district court. While not specifically stated in the court's opinion, I assume that the district court also may find that Kessler did not represent herself in the Supreme Court, or if she attempted to do so that the attempt was not proper (for reasons stated in the "Second" point, below, or

for any other reasons based upon presently unknown events in the district court or the Supreme Court).

Second, in a situation where we do not know what actually occurred in the district court, the en banc court is intervening in a matter involving district court policy. Initially the district judge thought that Kessler should not be both attorney and witness; it has not been contended that the district court's order requiring her withdrawal as co-counsel was erroneous. If the district court has not had an opportunity to rule on whether it would permit her to reappear (as counsel for herself) despite its prior and uncontested ruling that she could not be both counsel and witness, it is entitled to the first chance to rule.

RONEY, Circuit Judge, dissenting, in which HENDERSON, Circuit Judge, joins:

*"When I use a word," Humpty Dumpty said, in rather a scornful tone, "it means just what I choose it to mean—neither more nor less."*

*"The question is," said Alice, "whether you can make words mean so many different things."*

*"The question is," said Humpty Dumpty, "which is to be master—that's all."*

*Alice was too much puzzled to say anything;* ...[1]

Although not too puzzled to say anything, I am puzzled enough to say very little.

The sole source for the imposition of liability against the defendant for the prevailing plaintiff's attorney's fees in this case is 42 U.S.C.A. § 1988. There Congress provided that in a suit such as this to enforce a provision of 42 U.S.C.A. § 1983, "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs."

This case turns on the meaning of the word "attorney." Although the majority believes the "plain language" of section

**1.** *Alice Through the Looking Glass,* Lewis Carroll Ch. VI.

1988 "does not preclude an award of fees to a lawyer representing herself," we have simply been unable to find any definition which permits a decision that a *pro se* lawyer has an attorney. Set forth in an Appendix to this opinion are the definitions found in over two dozen dictionaries. Without exception they define the word "attorney" in terms of someone who acts for *another*, someone who is employed as an agent to represent *another*, someone who acts at the appointment of *another*. A basic principle of agency law is that "[t]here is no agency unless one is acting for and in behalf of *another*, since a man cannot be the agent of himself." 2A C.J.S. *Agency* § 27, at 592. For there to be an attorney in litigation there must be two people. Plaintiff here appeared *pro se*. The term *"pro se"* is defined as an individual acting "in his own behalf, in person."[2] By definition, the person appearing "in person" has no attorney, no agent appearing for him before the court. The fact that such plaintiff is admitted to practice law and available to be an attorney for others, does not mean that the plaintiff has an attorney, any more than any other principal who is qualified to be an agent, has an agent when he deals for himself. In other words, when applied to one person in one proceeding, the terms *"pro se"* and "attorney" are mutually exclusive.

Of course, sometimes, like Humpty Dumpty, courts do play the master. *See United States v. American Trucking Association,* 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940). But when Congress has chosen words with discernible "plain meaning," it is neither necessary nor proper for courts to do so. "Where the language of a statute is not ambiguous and does not lead to absurd results, the job of the courts is to apply it as written." *Arline v. School Bd.*

*of Nassau County,* 772 F.2d 759, 762 (11th Cir.1985).[3]

There is little support anywhere upon which to rest a decision contrary to the common definition of the words used by Congress in this statute. The majority recites legislative history to justify giving *pro se* litigants attorney's fees in the name of furthering the purposes of the Act. If one cabins the word attorney by its dictionary definition, however, there is not a shred of evidence that Congress would treat *pro se* litigants who happen to be attorneys differently from *pro se* litigants of other vocations, businesses or professions. Differences in qualification between attorneys and non-attorney *pro se* litigants would seem of little analytical use because in both instances the *pro se* party has necessarily prevailed in the litigation, just to make an attorney's fees claim under section 1988. What a *pro se* plaintiff does for a living should be irrelevant for purposes of section 1988 analysis. The costs to an attorney in representing herself may in many instances be no greater than the costs to *pro se* litigants of other vocations taking time from their regular work to represent themselves. To argue that an attorney can be an attorney for herself, but a non-attorney cannot because she is not an attorney, is syllogistic at best, and at worst a path to a result without regard to the meaning of words.

A *pro se* lawyer who attempts to act the attorney, rather than a party, has ethical problems not faced by the non-professional. Only if Congress passes a statute to permit all *pro se* parties, or *pro se* attorneys only, to obtain fees for themselves, however, should we be required to address the ethical and legal issues arising from attorneys testifying, attorneys receiving special treatment and non-attorneys receiving attorney's fees.

---

**2.** *See Black's Law Dictionary* 1099 (5th ed. 1979):

PRO SE. For himself; in his own behalf; in person. Appearing for oneself, as in the case of one who does not retain a lawyer and appears for himself in court.

**3.** New York, by rule, has defined "attorney," as used in its civil practice rules, as including any party, whether lawyer or not, prosecuting or defending an action in person. New York C.P. L.R. § 105, McKinneys New York Consolidated Laws 7B § 105(c). *See also* Black's Law Dictionary 118 (5th ed. 1979).

Here, plaintiff is by profession an attorney. In this case, however, she appeared *pro se*. She had no attorney representing her in this litigation. Since she had no attorney, the defendant should not have to pay any attorney's fees.

I see no objection, however, to the award of attorney's fees earned while the plaintiff was an attorney, representing another, prior to her becoming a party herself.

## APPENDIX

*American Heritage Dictionary* 140 (Second College Ed. 1982):

attorney ... A person legally appointed to act for another, esp. an attorney at law.

attorney at law ... One who is qualified to represent clients in a court of law and to advise them on legal matters; a lawyer.

*American Heritage Dictionary of the English Language* 85 (1969):

attorney ... A person legally appointed or empowered to act for another; especially an attorney at law....

attorney at law. One who is qualified to represent a party in a court of law and to prepare and manage his case; a lawyer.

*Black's Law Dictionary* 117–18 (5th ed. 1979):

ATTORNEY. In the most general sense this term denotes an agent or substitute, or one who is appointed and authorized to act in the place or stead of another.... In its most common usage, however, unless a contrary meaning is clearly intended, this term means "attorney at law", "lawyer" or "counselor at law"....

The word "attorney" includes a party prosecuting or defending an action in person....

*Attorney at law.* Person admitted to practice law in his respective state and authorized to perform both civil and criminal legal functions for clients, including drafting of legal documents, giving of legal advise, and representing such before courts, administrative agencies, boards, etc.

*Bouvier's Law Dictionary* (Unabridged) 282–86 (Vol. I 1914):

ATTORNEY. One put in the place, turn, or stead of another, to manage his affairs; one who manages the affairs of another by direction of his principal....

One who acts for another by virtue of an appointment by the latter....

*Attorney in fact.* A person to whom the authority of another, who is called the constituent, is by him lawfully delegated....

All persons who are capable of acting for themselves, and even those who are disqualified from acting in their own capacity, if they have sufficient understanding, as infants of a proper age, and femes coverts, may act as attorneys of others; ...

*Attorney-at-law.* An officer in a court of justice who is employed by a party in a cause to manage the same for him.

*Britannica World Language Ed., Funk & Wagnalls New Practical Standard Dictionary* 93 (1957):

attorney ... A person empowered by another to act in his stead; especially, one legally qualified to prosecute and defend actions in a court of law; an attorney at law; a lawyer.... An agent.

attorney at law. An attorney who is qualified to prosecute and defend actions in a court of law; ...

*Century Dictionary & Cyclopedia* 374 (Vol. I A–B 1913) *and* 374 (Vol. I A–C 1911):

attorney ... 1. One who is appointed by another to act in his place or stead; a proxy....

Specifically—2. In *law*, one who is appointed or admitted in the place of another to transact any business for him.... An *attorney at law*, sometimes called a *public attorney*, is a person qualified to appear for another before a court of law to prosecute or defend an action on behalf of such other....

attorney ... The appointment of another to act in one's stead; the act of naming an attorney....

*Chambers Twentieth Century Dictionary* 66 (1956):

attorney ... one legally authorised to act for another: one legally qualified to manage cases in a court of law....

*Comprehensive Etymological Dictionary of the English Language* 125 (1966):

attorney ... one authorized to act for another....

*Concise Etymological Dictionary of Modern English* 27 (1952):

attorney ... to appoint, constitute.... Orig. one duly appointed to act for another.

*Concise Oxford Dictionary* 60 (1976):

attorney ... One appointed to act for another in business or legal matters ... qualified lawyer, esp. representing client in proceedings....

*Dictionary of Obsolete English* 17 (1958):

Attorney. Seldom used now except of the attorney *at law;* being one, according to Blackstone's definition, 'who is put in the place, stead, or *turn* of another to manage his matters of law;' and even in this sense it is going out of honour, and giving way to 'solicitor.' But formerly any who in any cause acted in the room, behalf, or turn of another would be called his 'attorney:' thus Phillips (*New World of Words*) defines attorney, 'one appointed by another man to do anything in his stead, or to take upon him the charge of his business in his absence;' ...

*Dictionary of Word Origins* 32 (1945):

attorney ... If you were in trouble, or were going away, you would select someone to *turn to* ... to represent you; this man was your *attorney.* Its first meaning was, one assigned to act for another; as still in the expression, *power of attorney.* When you take a *detour,* of course, you *turn away* form the main path.

*Funk & Wagnalls Encyclopedic College Dictionary* 94 (1968):

attorney ... A person empower by another to act in his stead; especially an attorney at law....

attorney at law An attorney who is qualified to prosecute and defend actions in a court of law; lawyer.

*Harper Dictionary of Contemporary Usage* 54 (1975):

attorney/attorney at law The former is a term that includes all kinds of lawyers. The latter specifically refers to a lawyer who is qualified to represent his clients in a court of law.

*Lexicon Webster Dictionary* 65 (Vol. One A-Oyster 1976):

attorney ... A legal agent who represents a client in legal affairs;· a lawyer; one who is legally appointed or admitted in the place of another to transact any business for him.

*Oxford American Dictionary* 39 (1980):

attorney ... a lawyer, especially one qualified to represent or act for persons in legal proceedings.

*Oxford Dictionary of English Etymology* 61 (1966):

attorney ... legal agent.

*Oxford English Dictionary* 553–54 (Vol. I A–B 1933):

Attorney ... 1. One appointed or ordained to act for another; an agent, deputy, commissioner. In later times only *fig.* and perhaps with conscious reference to sense.... 2. (*Attorney in fact, private attorney.* ) One duly appointed or constituted ... to act for another in business and legal matters, either *generally,* as in payment, receipt, and investment of money, in suing and being sued, etc., or in some *specific* act, which the principal, by reason of absence, is unable to perform in person. Hence the contrast between 'in person' and 'by attorney,' frequent also in fig. senses.... 3. (*Attorney-at-Law, public attorney.*) A professional and properly-qualified legal agent practising in the courts of Common Law ... one who conducted litigation in these courts, preparing the case for the barris-

ters, or counsel, whose duty and privilege it is to plead and argue in open court....

*Oxford Illustrated Dictionary* 45 (1962): attorney ... One appointed to act for another in business in legal matters.

*Oxford Universal Dictionary* 120–21 (1933):

Attorney ... 1. ... 'one appointed,' ... 'one who acts *in the turn* of another'.... 1. One appointed to act for another, an agent, deputy, commissioner.... 2. (*Attorney in fact, private attorney.*) One duly appointed or constituted ... to act for another in business and legal matters, either *generally,* or in some *specific* act.... 3. (*Attorney-at-law, public attorney.*) A properly-qualified legal agent practising in the courts of Common Law ... one who conducts litigation in these courts, preparing the case for the barristers, who plead in open court....

Attorney ... 2... The action of appointing a legal representative, procuration....

Attorney ... to perform by attorney.

*Random House Dictionary of the English Language* (Unabridged) 96 (1967):

attorney ... 1. a lawyer; attorney-at-law. 2. an attorney-in-fact, agent.... one (who is) turned to, i.e., appointed.... attorney-at-law ... an officer of the court authorized to appear before it as a representative of a party to a legal controversy.

*Shorter Oxford English Dictionary* 120–21 (1933):

Attorney ... 1. ... 'one appointed', ... 'one who acts *in the turn* of another'.... 1. One appointed to act for another; an agent, deputy, commissioner ... 2. (*Attorney in fact, private attorney.*) One duly appointed or constituted ... to act for another in business and legal matters, either *generally,* or in some *specific* act.... 3. (*attorney-at-law, public attorney.*) A properly-qualified legal agent practising in the courts

of Common Law ...; one who conducts litigation in these courts, preparing the case for the barristers, who plead in open court....

Attorney ... 2... The action of appointing a legal representative, ... procuration....

Attorney ... To perform by attorney....

*Webster's Seventh New Collegiate Dictionary* 57 (1969):

attorney ... one who is legally appointed by another to transact business for him; ... a legal agent qualified to act for suitors and defendants in legal proceedings....

*Webster's Third New International Dictionary* 141 (1960):

attorney ... one who is legally appointed by another to transact any business for him; ... a legal agent qualified to act for suitors and defendants in legal proceedings....

attorney-at-law ... a practitioner in a court of law who is legally qualified to prosecute and defend actions in such court on the retainer of clients....