Herman SKINNER, Plaintiff–Appellee,

v.

CITY OF MIAMI, FLORIDA,
Defendant–Appellant,

Charles V. Boyd, Osvaldo Iglesias, Michael S. Whittington, Pedro Gomez, Charles K. McDermott, Colonel H. Duke, Defendants.

No. 93–4324.

United States Court of Appeals,
Eleventh Circuit.

Aug. 25, 1995.

---

Charles C. Mays, Asst. City Atty., Kathryn S. Pecko, Asst. City Atty., Miami, FL, for appellant.

Irving M. Miller, Susan Eisenberg, Miami, FL, for appellee.

Before TJOFLAT, Chief Judge, BLACK, Circuit Judge, and KAUFMAN *, Senior District Judge.

TJOFLAT, Chief Judge:

The City of Miami (the "City") appeals a $1.3 million verdict based on liability under 42 U.S.C. section 1983. Herman Skinner, a fire fighter, sued the City for injuries he sustained from a hazing incident. Because Skinner is unable to prove a violation of a right secured by the United States Constitution or federal law, we reverse the district court's denial of the City's motion for judgment as a matter of law.

---

* Honorable Frank A. Kaufman, Senior U.S. District Judge for the District of Maryland, sitting by designation.

## I.

The facts giving rise to this lawsuit are not in dispute. Herman Skinner, Charles V. Boyd, Osvaldo Iglesias, Michael S. Whittington, Pedro Gomez, and Charles K. McDermott were fire fighters employed by the City of Miami. With the exception of Skinner, the fire fighters were assigned to Fire Station No. 3. Skinner, who was assigned to Fire Station No. 4, was temporarily assigned to Fire Station No. 3 on the morning of December 9, 1989, as he had been between five and ten times before. During those prior assignments, Skinner developed a sense of camaraderie with the other fire fighters, which included engaging in joking, singing, and wrestling. For example, Skinner once jokingly placed his arm around Iglesias' neck and told Iglesias that "he looked good, and that if the two were stranded on an island together, Skinner would make Iglesias his woman."

When Skinner reported to Station No. 3 on the morning of December 9, the other fire fighters were asleep. Charles Boyd warned Skinner that "if you don't get out of here with all this loud noise, we are going to get you when we wake up." The day proceeded uneventfully with several of the fire fighters discussing a local high-profile criminal trial and singing a song.

After the singing ended, while Skinner sat in a chair and watched television, Boyd and Iglesias, assisted by McDermott and Whittington, approached him from behind and wrestled him to the floor. Handcuffs were applied to Skinner's wrists while he was on the floor. As Skinner was on the floor handcuffed, Boyd, who was naked, straddled Skinner's chest, grabbed Skinner's head, and rubbed his scrotum over the top of Skinner's head. Everyone present laughed except for Skinner, who demanded that the handcuffs be removed.

When the handcuffs were removed, Skinner chased Boyd. Skinner caught Boyd, but eventually walked back into the room holding Boyd's arm. Later, Skinner retaliated by grabbing Boyd's testicles causing Boyd to cry and scream. Three fire fighters eventually pulled Skinner away from Boyd. Skinner also attempted to bite Gomez's nipple and bent Iglesias' finger backwards.

On January 23, 1990, Skinner filed suit against the City of Miami, the Chief of the Fire Department (the "Chief") in his official capacity, and numerous fire fighters. Skinner asserted liability for violations of the Fifth and Fourteenth Amendments under section 1983 and pendent state law claims. On April 24, 1990, Skinner filed an amended complaint suing the City, the Chief in his individual and official capacities, and the fire fighters in their individual and official capacities, alleging violations of his Fourth, Fifth, and Fifteenth Amendment rights, as well as pendent state law claims. Specifically, Skinner alleged that the City "has a custom or policy of authorizing its fire fighters to engage in horseplay and hazing which exceeds the bounds of good taste and safety and is destructive to the morale of minority fire fighters and is so extreme that it violates certain rights secured to said persons by the constitution and laws of the United States." Record, vol. 1, at 4, No. 29. Skinner alleged that the City's practices violated the Fourth, Fifth, and Fourteenth Amendments, which "prohibit the use of excessive and unreasonable force; prohibit the deprivation of liberty without due process of law; and provide freedom from summary punishment." Record, vol. 1, at 7–8, No. 29.

Discovery ensued, and the individual fire fighters filed a host of counterclaims. Skinner reached confidential cash settlements with the individual fire fighters prior to trial. The City and Chief moved for summary judgment contending that Skinner had not been subjected to injuries under color of law and that the City and Chief did not unconstitutionally train, supervise, and discipline fire fighters. The district court denied the motion. The case was tried for five days (December 21, 1992 through December 30, 1992) before a jury. At the close of plaintiff's case, the City and Chief moved for judgment as a matter of law on the bases that plaintiff failed to prove any custom, practice, or policy or that the fire fighters were acting under color of law. Record, vol. 8, at 40, No. 236. The district court granted the motion as to the Chief, in both his individual and official capacities, but denied it as to the City. The jury returned a verdict in the amount of $1.3

million. The district court denied the City's motions for judgment as a matter of law, and in the alternative, for a new trial, and entered final judgment. This appeal followed.

## II.

■ Section 1983 states, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2695 n. 3, 61 L.Ed.2d 433 (1979)). To succeed, a section 1983 plaintiff must show a violation of a right secured by federal law.

■ Skinner alleged in his amended complaint violations of the Fourth, Fifth, and Fourteenth Amendments. At oral argument, Skinner's counsel acknowledged that there had been no Fourth Amendment violation. We are left with a substantive due process claim.[1] The substantive element of the Due Process Clause protects those rights that are "fundamental"—rights that are "implicit in the concept of ordered liberty." *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937). The Supreme Court has deemed that most, but not all, of the rights enumerated in the Bill of Rights are fundamental. Certain unenumerated rights, such as the right to privacy, also merit protection. *See, e.g., Planned Parent-*

hood *v. Casey*, —— U.S. ——, ——, 112 S.Ct. 2791, 2807, 120 L.Ed.2d 674 (1992).

■ Although the Supreme Court has extended substantive due process protection to certain unenumerated rights, it has not extended Fourteenth Amendment coverage to many areas. Tort law is one such area that remains largely outside the scope of substantive due process jurisprudence. *Daniels v. Williams*, 474 U.S. 327, 332, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986) (noting that the Due Process Clause "does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society"); *Wright v. Lovin*, 32 F.3d 538, 540 (11th Cir.1994). "[S]ubstantive rights ... created *only* by state law (as is the case with tort law and employment law) are not subject to substantive due process protection under the Due Process Clause because 'substantive due process rights are created only by the Constitution.'" *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir.1994) (en banc) (emphasis added) (quoting *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229, 106 S.Ct. 507, 515, 88 L.Ed.2d 523 (1985) (Powell, J., concurring)), *cert. denied*, —— U.S. ——, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995).

> [T]he Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended. The doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.

*Collins v. City of Harker Heights*, 503 U.S. 115, 125, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992) (citation omitted). Skinner has proven that he was assaulted—that, however, is a tort created by state law, and not necessarily a violation of a constitutional right.[2] Skinner has failed to show a violation of any

---

1. The Due Process Clause of the Fourteenth Amendment states: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

2. The record does not support the dissent's implication that the City committed any deliberate

acts to injure Skinner. At most, the evidence suggests that certain fire department officials knew that hazing incidents had occurred at some points in the past. This, however, falls short of demonstrating that the City violated a substantive constitutional right.

**348**

right secured by federal law either under the Constitution or a federal statute.

 Skinner argues that we should not consider the issue of a constitutional violation because it was not raised by the City in the district court or on appeal. Minimal attention was paid to the issue of a constitutional violation in the district court.[3] Although as a general rule, an appellate court will not consider a legal issue or theory raised for the first time on appeal, *Lattimore v. Oman Constr.*, 868 F.2d 437, 439 (11th Cir.1989) (per curiam), we have discretion to do so if the new issue or theory "involves a pure question of law, and if refusal to consider it would result in a miscarriage of justice," *United States v. Southern Fabricating Co.*, 764 F.2d 780, 781 (11th Cir.1985) (per curiam) (quotation omitted). Whether a constitutional violation has occurred is a question of law and the refusal to consider it would result in a miscarriage of justice—especially when a $1.3 million verdict is at issue. The issue, moreover, was not ignored entirely during the proceedings below. When discussing proposed jury instructions, counsel for the City did object to proposed wording and acknowledged that "in order for [plaintiff] to have a [section] 1983 case, you [must] have a right that exists under the Federal constitution or [under a] Federal statute." Record, Vol. 8, at 301.

We have given the parties ample opportunity to be heard on the subject, both at oral argument and through supplemental briefing. At no time has Skinner been able to point to any authority demonstrating that he has suffered a constitutional deprivation as opposed to a state law tort. The cases he relies on arose in the custodial setting and are inapposite.[4] *See, e.g., Cannon v. Macon County*, 1 F.3d 1558 (11th Cir.1993); *Douthit v. Jones*, 619 F.2d 527 (5th Cir.1980).[5] We, therefore, must conclude that although Skinner was the victim of a state law tort, he has not shown a constitutional violation. Consequently, he is not entitled to relief under section 1983.

3. This treatment is exemplified by the imprecise and scattered manner in which the district court instructed the jury on Skinner's constitutional claims:

Plaintiff, Herman Skinner, has alleged that the defendant, the City of Miami, has deprived him of his constitutionally guaranteed right to be free from unreasonable seizures or physical abuse.

You, the jury, are instructed that Title 42 U.S.C. Section 1983 provides a federal remedy for the deprivation of rights, privileges, or immunities secured by the Constitution or the law of the United States.
Instruction No. 8A, Record, Vol. 3, at 12, No. 180.

In order to determine whether a plaintiff can recover from a defendant under 42 U.S.C. Section 1983 for deprivation of his constitutionally guaranteed rights to be free from unlawful seizure or physical abuse, you would have to determine whether such deprivation occurred. However, the parties have agreed that said seizure and physical abuse did occur.

Specifically, Herman Skinner claims that five fire fighters while acting under color of authority of the State of Florida as members of the Fire and Rescue and Inspection Services Department of the City of Miami made an unprovoked attack upon Plaintiff in violation of his constitutional rights. It is alleged that these fire fighters intentionally violated Skinner's constitutional rights including the right to be free from the use of excessive and unreasonable force, physical abuse and the right not to be deprived of his liberty without due process of law. Plaintiff alleges that the City of Miami is liable for this constitutional deprivation because the actions of these fire fighters were permitted to occur because of customs, practices or policies of the City of Miami Fire Department which reflect a deliberate indifference to the rights of persons employed as fire fighters.
Instruction No. 8B, Record, Vol. 3, at 13, No. 180.

In order to prove his claim, Herman Skinner must prove by a preponderance of the evidence each of the following facts:
1) that the fire fighters intentionally committed acts which violated one or more of Skinner's constitutional rights previously mentioned....
Instruction No. 8C, Record, Vol. 3, at 14, No. 180.

4. At oral argument, Skinner relied on *MacDowell v. Manchester Fire Dep't*, 769 F.Supp. 40 (D.N.H. 1990), for the proposition that a government employee owes a co-worker a *constitutional* duty not to engage in harassing behavior. Our review of that case does not support such a reading, nor could we find any case to support such a proposition.

5. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

We REVERSE and REMAND this case to the district court for entry of judgment in accordance with the City's motion for judgment as a matter of law.

IT IS SO ORDERED.

FRANK A. KAUFMAN, Senior District Judge, dissenting:

Chief Judge Tjoflat cites to and quotes from *Collins v. City of Harker Heights*, 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). In *Collins*, Justice Stevens, after noting the difference between "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the City is responsible for that violation", 503 U.S. at 120, 112 S.Ct. at 1065–66, analyzed the first issue in terms of substantive due process and quoted from *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 196, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989), (quoting *Davidson v. Cannon*, 474 U.S. 344, 348, 106 S.Ct. 668, 670–71, 88 L.Ed.2d 677 (1986)), that substantive due process is only violated when government involves itself in "abusing [its] power, or employing it as an instrument of oppression" or when "an omission can ... properly be characterized as ... arbitrary or conscience-shocking, in a constitutional sense", rather than in the context of "a fairly typical state law tort claim." 503 U.S. at 126–28, 112 S.Ct. at 1069–70. That approach by Justice Stevens would appear fully in line with the standard in *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), adopted in cases such as *McKinney v. Pate*, 20 F.3d 1550, 1556, n. 7 (11th Cir.1994), and *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1500 (11th Cir.1985), *cert. denied*, 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986).[1] In *Gilmere* at 1500–01, Judge Vance quoted Judge Friendly's observations in *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973):

> Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights. In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*Johnson v. Glick* took place in a prison setting. In the majority opinion, Judge Tjoflat distinguishes prison cases on the grounds that matters which arise in a custodial setting are hardly fully applicable in an employment, non-custodial setting of the type set forth in the within case. I fully agree. However, that does not mean that substantive due process provides no protection for persons in the position of Skinner in a state employment situation. Rather, the test set forth in *Collins*, which itself involved an employment relationship and not a custodial setting, still remains fully applicable in a case such as this case.

An examination of the record in this case discloses that Skinner presented considerable evidence showing a long standing custom and practice of unfettered hazing by fellow employees, on a number of occasions, including group attacks upon a single fire fighter who had been recently promoted or married, or the like. Such evidence includes incidents during which four or five fire fighters held a fire fighter selected as their victim, while one or more other fire fighters painted the genitals of the victim and other fire fighters looked on, having, in one or more instances, been alerted by announcement over the loudspeaker system within the firehouse that the event was about to take place. There was, in addition, evidence that such occurrences had become sufficiently traditional, to have caused special vocabulary to be developed. The so called "three man lift" were words used with regard to the type of occurrence described *supra*. The words "red assing" were employed generally to describe a certain form of hazing. The evidence also was rather specific concerning the knowledge of such practices held by the Chief of the Fire Department and by other responsible officials of that department and that such officials had, at most, ineffectually attempted to stop the practices. Such evidence falls with-

---

1. But see the reservations as expressed by Judge Tjoflat's separate opinion, joined in by Judges Roney and Fay, in *Gilmere* at 1511, n. 21; see also *McKinney* at 1556, n. 7.

in the standards adopted by the Supreme Court in *Collins*, 503 U.S. at 126, 112 S.Ct. at 1069, of abuse of power, and actions which constitute oppressive behavior by superiors in permitting fellow employees to engage in the same, and also adds up to "conscience shocking" behavior exceeding the typical state law tort claim on behalf of one employee against one or more other employees of the State. Further, such practices were permitted to continue over a long period of time and fell beyond the single type of "push or shove" occurrence referred to by Judge Friendly in *Johnson v. Glick*, at 1033.[2] Nor do such practices constitute the kind of behavior which governmental officials may ignore without liability. See, by way of contrast, *Lovins v. Lee*, 53 F.3d 1208 (11th Cir. 1995), in which governmental officials were held non-liable for rape by a violent criminal allegedly, wrongfully released on a temporary pass from prison.

In his majority opinion, the Chief Judge has written[3]: "The record does not support the dissent's implication that the City committed any deliberate acts to injure Skinner. At most, the evidence suggests that certain fire department officials knew that hazing incidents had occurred at some points in the past. This, however, falls short of demonstrating that the City violated a substantive constitutional right". I respectfully disagree. A deliberate act to injure on the part of the City of Miami is not necessary to establish liability pursuant to § 1983. Rather, a municipality may be subject to § 1983 liability if

plaintiff establishes "a widespread practice that, 'although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law,' (citations omitted). In other words, a longstanding and widespread practice is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir.1991).[4] In the within case, there is quite a bit of evidence of just such a failure to stop a known, widespread practice, and also of the fact that there were scattered ineffectual attempts to curtail that practice. Those ineffectual attempts support the verdict of the jury in favor of the plaintiff—they do not undermine it.

In his majority opinion, Judge Tjoflat writes "[m]inimal attention was paid to the issue of a constitutional violation in the district court", and refers to the fact that the district court simply instructed the jury that Skinner had claimed denial of his "constitutionally guaranteed right to be free from unreasonable seizures or physical abuse." See n. 2 in the majority opinion, along with parts of the record setting forth the jury instructions relating to the roles played by responsible officials of the City of Miami. Certainly it would have been better for the trial judge to have utilized the standards enunciated by Justice Stevens in *Collins* and by Judge Friendly in *Johnson v. Glick*. But the record does not disclose that defendants-appellants specifically requested such instructions, or even, in general, requested the inclusion of the same in the jury instructions. Under the circumstances, it would appear

2. *MacDowell v. Manchester Fire Dep't.*, 769 F.Supp. 40 (D.N.H.1990), relied on by Skinner and discussed by Judge Tjoflat, *see* n. 3 of the majority opinion, may well have only involved such a single type of event; accordingly its authority may be questionable.

3. See n. 2 of the majority opinion.

4. *See also Church v. City of Huntsville*, 30 F.3d 1332, 1345–1347 (11th Cir.1994); *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir.1987) ("(a) municipality's failure to correct the constitutionally offensive actions of its police department may rise to the level of a 'custom or policy' if the municipality tacitly authorizes these actions or displays deliberate indifference towards the police misconduct (citations omitted))"; *Depew v. City of St. Mary's*, 787 F.2d 1496, 1499 (11th Cir.1986). Authority to the same effect also emanates from other Circuits; *see, e.g., McNabola v. Chicago Transit Authority*, 10 F.3d 501, 511 (7th

Cir.1993) (quoting from the Eleventh Circuit's opinion in *Brown*); *Bordanaro v. McLeod*, 871 F.2d 1151, 1157 (1st Cir.), *cert. denied*, 493 U.S. 820, 110 S.Ct. 75, 107 L.Ed.2d 42 (1989); *Spell v. McDaniel*, 824 F.2d 1380, 1386–87 (4th Cir. 1987), *cert. denied*, 484 U.S. 1027, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988). Individual liability, as contrasted with liability pursuant to *Monell v. Dep't of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), can also stem from such omissions. *See Swint v. City of Wadley*, 51 F.3d 988, 999 (11th Cir.1995), involving an arrest, not an employment setting. But that distinction, as discussed *supra* in the body of this dissent, does not, in my view, adversely affect the application herein of a combination of the standards of *Collins* and *Monell* so as to require anything other than affirmance of the judgment below.

that the jury instructions were not so lacking in compliance with applicable legal standards so as to require a new trial in order to avoid a miscarriage of justice.

That is particularly true in this case in which, from my point of view, there is more than ample evidence to sustain the jury's verdict and to support affirmative answers by the jury to the two discrete questions posed by *Collins*, namely that (1) "plaintiff's harm was caused by federal constitutional violation", and (2) "The City is responsible for that violation." *Collins*, 503 U.S. at 120, 112 S.Ct. at 1066.

For the reasons set forth in this separate opinion, I respectfully dissent and would affirm the judgment of the district court.