**Manis G. COX, Plaintiff,**

v.

**Dr. Thomas L. McCRALEY, as Superintendent of Schools for Osceola County, Florida; Chris Colombo, individually and as former Superintendent of Schools for Osceola County, Florida; and Michael L. Whitman, individually, Defendants.**

No. 97–733–CIV–ORL–18B.

United States District Court,
M.D. Florida,
Orlando Division.

Feb. 10, 1998.

John Fredric Wendel, Wendel, Chritton &
Parks, Chartered, Lakeland, FL, Gary M.
Glassman, Glassman & Golden Norris, Sara-
sota, FL, for Plaintiff.

Francis H. Sheppard, Rumberger, Kirk & Caldwell, P.A., Orlando, FL, Stephen A. Weinstein, Martin B. Unger, Unger, Swartwood, Latham, Whitaker & Indest, P.A., Orlando, FL, for Defendants.

## ORDER

SHARP, District Judge.

In this case, plaintiff Manis G. Cox (Cox) invokes 42 U.S.C. § 1983 and sues the Osceola County School Board (the School Board) through its Superintendent Dr. Thomas L. McCraley (McCraley). Cox alleges violations of his constitutional rights as secured by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and corresponding sections of the state constitution. Cox also sues his former supervisor, Michael L. Whitman (Whitman), and former School Board Superintendent, Chris Colombo (Colombo), each in their individual capacity for the same alleged violations.[1] The case is presently before the court on defendants' motion to dismiss or, in the alternative, for summary judgment, to which Cox has responded in opposition. After reviewing the amended complaint and the relevant law, the court finds that defendants' motion to dismiss is due to be granted.[2]

### I. Factual Background

Cox was employed by the School Board as a lead painter. His employment was on an annual-appointment basis, for which he worked pursuant to a one year contract for each appointment. He had been so employed for eleven (11) years, during which time he received favorable performance evaluations.

Through a letter dated March 4, 1994, Whitman advised Cox that he had a "reasonable suspicion" that Cox had violated School Board policy regarding drug and/or alcohol abuse. The letter further advised that Cox could either submit to a drug test, join an employee assistance program, or resign his employment. Other School Board employees received a similar letter.

Cox elected to take the drug screening test. Cox states that Whitman ultimately denied him the opportunity to take the test because Whitman claimed that the portion of the letter making reference to a drug test was supposed to have been omitted from the letter Cox received. As such, Cox flatly denied any drug use and was allowed to finish-out the term of his annual appointment which ran until June 30, 1994. Thereafter, Colombo elected not to reappoint Cox for the following fiscal year.

Cox later filed a grievance with the School Board in reference to the circumstances set forth above. The School Board conducted a full evidentiary hearing, at which it entertained Cox's grievance from September 29, 1994 through October 1, 1994. While the School Board ultimately concluded that there

---

1. Cox's allegations also contemplate a claim against Colombo in his official capacity as the former Superintendent of Schools. Such a claim is redundant inasmuch as Cox has sued McCraley, the current Superintendent, in his official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (citations omitted) (holding that official-capacity suits against an individual are, in legal effect, suits against the entity the individual represents). As such, the official-capacity portion of Cox's claim against Colombo will receive no separate treatment. Further, while Cox captioned his amended complaint as being against Whitman "individually," his substantive allegations also suggest a claim for official-capacity liability. (Amended Complaint at ¶ 10.) For the same reasons set forth as to the official-capacity claim against Colombo, any allegations against Whitman in his official capacity will be ignored as duplicative. *Id.*

2. It also appears that defendants would be entitled to summary judgment. Despite receiving the court's order issued in accordance with the dictates of *Milburn v. United States*, 734 F.2d 762, 766 (11th Cir.1984), Cox failed to submit any evidence to support his contentions or otherwise establish the essential elements of his case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (mandating summary judgment against non-moving party when he fails to submit evidence establishing essential elements of his case, on which he would bear the burden of proof at trial). Inasmuch as a moving party may rely solely upon his pleadings in making a legally-sufficient motion for summary judgment, the non-moving party, Cox in this case, *must* go beyond the pleadings and submit *evidence* to support each and every essential element of his case or else summary judgment may be entered in favor of the moving party. *Id.* 477 U.S. at 324 (emphasis added). Notwithstanding the clarity of Rule 56(c) of the Federal Rules of Civil Procedure and this court's *Milburn* order, Cox filed no evidence in the face of defendants' alternate motion for summary judgment.

was no reasonable suspicion of drug use by Cox, it similarly concluded that it was powerless to alter Colombo's decision not to reappoint Cox. Thus, the School Board officially denied Cox's grievance by final order dated March 23, 1995. Cox appealed the Board's decision to Florida's Fifth District Court of Appeal, which affirmed the Board's decision.

## II. Legal Discussion

The facts set forth above moved Cox to file the instant lawsuit, claiming that defendants committed an "unwarranted invasion of [his] fundamental right to privacy [which] formed the basis of the decision not to renew his contract with the School Board." (Amended Complaint at ¶ 16.) Cox invokes 42 U.S.C. § 1983 in stating his claims for alleged violations of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution (Count I). Cox then states a similar claim pursuant to the corresponding sections of Florida's Constitution (Count II), and also what appears to be a claim for intentional infliction of emotional distress under Florida's common law (Count III). After setting forth the legal standard against which defendants' motion will be tested the court will evaluate each of Cox's claims in turn.

### A. Legal Standard for Motions to Dismiss

When evaluating a motion to dismiss, the court accepts the allegations in the complaint as true, and otherwise views the allegations in the light most favorable to the plaintiff. *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir.1992) (citing *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994–95 (11th Cir.1983)). However, the court is not permitted to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the ... laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). Applying these rules, the court may dismiss a claim for failure to state a claim upon which relief can be granted if defendant demonstrates that plaintiff can prove no set of facts which would entitle him to relief

under the applicable substantive law. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *accord Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir.1990).

### B. Cox's Substantive Claims

Count I of Cox's amended complaint contains claims for violation of his Fourth–Amendment right to privacy and his Fifth–Amendment right to procedural due process.[3] Cox presses these claims against the School Board, as well as Colombo and Whitman individually. To impose liability upon any of these defendants, Cox must invoke 42 U.S.C. § 1983.

While Section 1983 does not itself provide any substantive rights, it provides the conduit through which aggrieved parties may sue those persons who have trampled federal substantive rights conferred elsewhere. *See* 42 U.S.C. § 1983 (1994); *accord Skinner v. City of Miami, Fla.*, 62 F.3d 344, 347 (11th Cir.1995). The United States Supreme Court has long held that municipal governments constitute "persons" amendable to suit within the meaning of Section 1983. *Monell v. Department of Social Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). As such, Cox may use Section 1983 in seeking to impose liability upon the School board in the instant case.

To establish municipal liability a plaintiff must prove that the municipal action which spawned the claimed constitutional deprivation "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or is "visited pursuant to governmental 'custom' even though such custom has not received formal approval through the body's official decision-making channels." *Monell*, 436 U.S. at 690–91; *accord Free v. Granger*, 887 F.2d 1552, 1556 (11th Cir.1989). Regardless of whether the plaintiff alleges municipal liability based upon an officially promulgated policy or an unofficially adopted custom, it must be the "moving force behind the constitutional deprivation before liability will attach." *Fun-*

---

3. Cox does not allege, nor could he properly allege, any cognizable substantive due process

violations given the facts of this case. *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir.1994).

*diller v. City of Cooper City,* 777 F.2d 1436, 1442 (11th Cir.1985) (citing *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 819–20, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)).

In the case at bar, the only mention Cox makes regarding a municipal policy or custom comes in reference to the letter Whitman wrote to Cox indicating a suspicion of drug or alcohol abuse. Cox states simply, "[a] similar letter was sent to other employees of the School Board which constituted a custom or policy of the School Board." (Amended Complaint at ¶ 13.) This nondescript, conclusory reference to an abstract custom or policy does nothing to move Cox closer to stating a cognizable substantive claim. The court assumes that Cox does not suggest that sending letters to various School Board employees represents any identifiable officially-promulgated policy, inasmuch as he fails to identify a source for said policy. Thus, he is left only with a claim that such is an unofficially adopted custom of the School Board. In such case, a custom may only give rise to municipal liability if it is so entrenched and long-standing that it carries the force of law. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). Cox makes no such allegation, and nothing else in his amended complaint would suggest that to be the case. Inasmuch as *respondeat superior* liability is unavailable under Section 1983 and Cox has failed to allege any identifiable policy or custom that could have given rise to the violations he claims, his amended complaint fails to state a cognizable claim against the School Board in the instant case. *See Monell,* 436 U.S. at 691 (disallowing *respondeat superior* theory of municipal liability under Section 1983).

Even if the court were to have found that Cox had properly invoked Section 1983 by identifying an official policy or unofficial custom through which the School Board had allegedly violated his rights, Cox's amended complaint would nevertheless fail to state a claim under either the Fourth, Fifth, or Fourteenth Amendment to the United States Constitution. Though given two chances to define and state his claims, Cox has failed to come forth with any viable cause of action. As to his privacy claim under the Fourth and Fourteenth Amendments, Cox has failed to make allegations that anything "implicit in the concept of ordered liberty" was threatened or violated as to him. *See Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 82 L.Ed. 288 (1937), *overruled on other grounds by Benton v. Maryland,* 395 U.S. 784, 793–94, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); *see also Albright v. Oliver,* 510 U.S. 266, 301, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). Reading his amended complaint most liberally, he claims that the School Board's demand that he submit to a drug test (which was never administered), enter an employee assistance program, or resign his employment violates his fundamental right to privacy in some fashion. This court was unable to independently uncover any interpretation of the Fourth Amendment making such a contention viable on the facts of the instant case. As such, the court holds that Cox's amended complaint fails to state a claim against the School Board upon which relief can be granted under the Fourth Amendment to the United States Constitution.

The court finds similarly as to Cox's due process claim under the Fifth and Fourteenth Amendments. At best, Cox's amended complaint can be read to assert a procedural due process claim predicated upon the fact that he was not reappointed for an annual contract as a School Board painter for the 1995 fiscal year. Inasmuch as Cox can claim no property interest or right in such an appointment, or otherwise in continued employment with the School Board, no procedural due process violation can follow from its actions. *Bishop v. Wood,* 426 U.S. 341, 347, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *accord McKinney,* 20 F.3d at 1556. Notwithstanding that, Cox received all the process that otherwise might be due. His contract ran on its own terms and it is well within the discretion of the School Board, through its Superintendent, to withhold any future annual appointments. Despite the fact that such action was within the Board's discretion, the Board offered Cox a full evidentiary hearing on the grievance he filed. In fact, the Board found in his favor as to the existence of reasonable suspicion of drug or alcohol abuse, but correctly concluded that it could not overturn the Superintendent's decision not to reappoint Cox to subsequent an-

nual contract. Florida's Fifth District Court of Appeal affirmed the findings and decision of the School Board after full appellate review. *See Cox v. School Bd. of Osceola County,* 669 So.2d 353, 356 (Fla.Dist.Ct.App. 1996). Cox has failed to state any cognizable due process claim against the School Board.

The court next turns to Cox's federal claims against Colombo and Whitman in their individual capacity. To succeed on a Section 1983 claim against an individual defendant, a plaintiff must prove that the defendant acted under the color of state law to deprive the plaintiff of a right conferred by the Constitution or the laws of the United States. *See White v. Scrivner Corp.,* 594 F.2d 140, 141 (5th Cir.1979) (citing *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978)). Cox alleges, and the court must accept as true, that both Colombo and Whitman were acting under the color of state law when dealing with Cox in the manner about which he now complains; neither defendant disputes this.

However, both Colombo and Whitman have sought the protection of qualified immunity from Cox's claims. Clearly, government officials performing discretionary functions are entitled to qualified immunity from civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Cox does not dispute that defendants were performing discretionary functions when defendants allegedly violated his constitutional rights. Therefore, he bears the burden of proving that defendants violated clearly established law. *Rich v. Dollar,* 841 F.2d 1558, 1563–64 (11th Cir.1988).

To prove that the rights allegedly violated were clearly established, Cox must show that defendants should have known that their actions were violative of his rights as established by closely analogous precedent. *See Harlow,* 457 U.S. at 818 (holding that general allegations of wrongdoing should not suffice to subject government officials to the costs and burdens of trial and that the

right the official is alleged to have violated must have been clearly established in a more particularized sense). Further, because qualified immunity is "an *immunity from suit* rather than a mere defense to liability," *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (emphasis in original), the applicability of qualified immunity is a threshold question that courts must decide at the earliest possible stage of the litigation. *Harlow,* 457 U.S. at 818. Inasmuch as defendants at bar raised and argued the issue of qualified immunity in support of their motion to dismiss, Cox's failure to adequately address this issue in his response is inexplicable. Regardless, the court, in keeping with the dictates of *Mitchell and Harlow,* will resolve the issue now.

The court can imagine no case where the entitlement to qualified immunity would be more clear than in the one at bar. The only allegation made against Whitman is that he tendered a letter to Cox indicating a suspicion that Cox was abusing alcohol or drugs in violation of School Board policy, and suggesting that Cox would, therefore, have to submit to a drug screening test, join employee assistance program, or resign. As it turned out, Cox did none of these and finished-out his annual contract without further incident. As to Colombo, Cox alleges only that he failed to reappoint Cox to a subsequent annual contract which is a matter well within his discretion. Qualified immunity was designed and intended to shield government officials from suit on allegations such as these. The court finds that, taking all Cox's allegations as true, both Colombo and Whitman were acting within the scope of their authority and did not violate any clearly established law of which a reasonable person would have known. As such, the court grants Colombo and Whitman qualified immunity from suit on the individual capacity allegations of Cox's amended complaint.[4]

Accordingly, the court finds that Cox has failed to state any claim under federal law upon which relief can be granted on the facts of his amended complaint. As such, and

---

4. Cox only stated individual-capacity allegations as to Colombo and Whitman, not McCraley. McCraley was simply sued in his official capacity as a means of attributing liability to the School Board, as the caption and substance of Cox's amended complaint reveals.

inasmuch as the court has already given Cox leave to amend, the complaint will now be dismissed with prejudice. *See Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir.1991) (where district court has granted plaintiff leave to better state his claim for relief through an amended complaint, dismissal with prejudice is appropriate).

### C.   State Law Claims

As the court has dismissed all claims over which it has original jurisdiction in the case at bar, the court exercises its discretion pursuant to 28 U.S.C. § 1367(c)(3) and declines supplemental jurisdiction over Cox's state law claims. Thus, those claims will be dismissed from this action without prejudice.

### III.   Conclusion

In accordance with the foregoing, the court concludes that Cox's amended complaint fails to adequately assert or establish any School Board policy or custom through which the alleged constitutional violations could have occurred. The court further holds that the substantive allegations in Cox's amended complaint fail to state any claim against the School Board upon which relief can be granted under the federal law on which he relies. Finally, the court holds that defendants Colombo and Whitman are entitled to qualified immunity from suit on Cox's federal claims. Accordingly, the court **GRANTS** defendants' motion to dismiss (Doc. 23) as to Count I of Cox's amended complaint which will be dismissed with prejudice. As to Counts II and III, the court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3). Counts II and III are therefore **DISMISSED** without prejudice. The clerk of the court may close this case.