<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 United States Court of Appeals
                     For the First Circuit
                      ____________________

No. 98-1316

                       MARK J. FOURNIER,

                      Plaintiff, Appellee,

                               v.

                 CHARLES REARDON, ETC., ET AL.,

                    Defendants, Appellants.

                      ____________________

          APPEAL FROM THE UNITED STATES DISTRICT COURT

               FOR THE DISTRICT OF MASSACHUSETTS

          [Hon. Joseph L. Tauro, U.S. District Judge]

                      ____________________

                             Before

                    Torruella, Chief Judge,

               Boudin and Stahl, Circuit Judges.

                     _____________________

   William P. Breen, Jr., with whom John J. Davis and Morrison,
Mahoney & Miller were on brief, for appellants.
   Thomas C. Regan, with whom Pearl, McNiff, Crean, Cook &
Sheehan was on brief, for appellee.

                      ____________________
                                
                      November 10, 1998
                     ____________________

         TORRUELLA, Chief Judge. Defendant-appellants appeal the final
order and judgment denying the defendants' motion to dismiss.  
Plaintiff-appellee, Mark J. Fournier ("Fournier"), claims that he
is entitled to monetary damages for personal injuries allegedly
sustained as a result of the defendants' alleged deprivation of
his rights under the Fourth and Fourteenth Amendments.  Fournier
asserts that the defendants are liable under the Federal Civil
Rights Act, 42 U.S.C.  1983, and under the Massachusetts Civil
Rights Act, Mass. Gen. Laws ch. 12,  11I.  For the following
reasons, we reverse.
BACKGROUND  Fournier was employed by the Essex County Sheriff's
Department as a corrections officer for more than ten years prior
to entering a basic training academy ("academy") run by the Essex
County Sheriff's Department.  On May 1, 1995, Fournier and twenty
other corrections officers began attending a nine week basic
training course which the Essex County Sheriff's Department
required for full-time employment.  The academy was staffed by
other Essex County Sheriff's Department corrections officers.  It
offered both classroom and physical training such as standing at
attention, instruction as to chain of command, and protocol in
interacting with superior officers.
         On the second day of the course, Fournier was ordered to report
to the academy training staff's office.  Protocol taught and
enforced at the academy required that Fournier, an academy
recruit: (1) knock outside the instructors' office door; (2)
announce his presence; and (3) request permission to enter before
entering the instructors' office.  Fournier breached academy
protocol when he failed to follow this regimented procedure and
entered the office unannounced.
         To punish Fournier for violating academy protocol, one of the
drill instructors present in the room ordered Fournier to turn
around and bend over.  When Fournier complied, the drill
instructor placed handcuffs on his wrists and informed Fournier
that he was being placed under "house arrest" for entering the
instructors' office without having requested permission.  The
drill instructor then allegedly put Fournier's written reports in
his mouth and ordered him to return to the classroom.  The other
drill instructors in the room failed to intervene on Fournier's
behalf.
         Fournier returned, in handcuffs, to the classroom.  Within five
minutes of the "house arrest," the drill instructor entered the
classroom.  Pursuant to academy protocol, the recruits rose to
attention upon the entrance of a superior officer.  When the
drill instructor ordered the class to be seated, Fournier
attempted to seat himself.  Unfortunately, Fournier missed his
chair and fell to the ground, allegedly sustaining serious
personal injuries, including a fractured vertebra.
DISCUSSION  
I.  Standard of Review
         Although most denials of motions to dismiss are not "final
decisions," and thus are not independently appealable, a district
court's rejection of a qualified immunity defense is a "final
decision,"  Mitchell v. Forsyth, 472 U.S. 511, 528 (1985), and
thus we review it here.  Because "[a] necessary concomitant to
the determination of whether the constitutional right asserted by
a plaintiff is 'clearly established' at the time the defendant
acted is the determination of whether the plaintiff has asserted
a violation of a constitutional right at all,"  Siegert v.
Gilley, 500 U.S. 226, 232 (1991), we will consider whether
Fournier has asserted a violation of any constitutional right in
his complaint.
II.  Section 1983 Claims
           Section 1983 states, in relevant part:
           Every person who, under color of any statute, ordinance,
           regulation, custom, or usage, of any State . . . subjects, or
           causes to be subjected, any citizen of the United States   . . .
           to the deprivation of any rights, privileges, or immunities
           secured by the Constitution and laws shall be liable to the party
           injured in any action at law, suit in equity, or other proper
           proceeding for redress.

42 U.S.C.  1983.  "[Section] 1983 'is not itself a source of
substantive rights,' but merely provides 'a method for
vindicating federal rights conferred.'"  Graham v. Connor, 490
U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137,
144 n.3 (1979)).  "To succeed, a section 1983 plaintiff must show
a violation of a right secured by federal law."  Skinner v. City
of Miami, 62 F.3d 344, 346 (11th Cir. 1995).   
         Fournier claims three separate constitutional violations:  (1) a
violation of his Fourth Amendment rights; (2) a violation of his
right to due process under the Fourteenth Amendment; and (3) a
violation of his right to equal protection of the laws under the
Fourteenth Amendment.  None of his arguments is persuasive.
         A.  Fourth Amendment
         The Fourth Amendment provides that "[t]he right of the people to
be secure . . . against unreasonable . . . seizures, shall not be
violated."  U.S. Const. amend. IV.  Under the Mendenhall test,
formulated by Justice Stewart in United States v. Mendenhall, 446
U.S. 544, 554 (1980), and adopted by the United States Supreme
Court in later cases, see Michigan v. Chesternut, 486 U.S. 567,
573 (1988):  "[A] person has been 'seized' within the meaning of
the Fourth Amendment only if, in view of all of the circumstances
surrounding the incident, a reasonable person would have believed
that he was not free to leave."  Mendenhall, 446 U.S. at 554.  
         Fournier argues that when the drill instructor placed him under
"house arrest" and handcuffed him behind his back, he was seized
for purposes of Fourth Amendment analysis.  We disagree. Under
the Mendenhall test, a court must look at all the circumstances
surrounding the incident to determine if a reasonable observer
would have believed that Fournier was not free to leave.
         Although Fournier was handcuffed, no evidence presented would
support a finding that he was not free to leave at any point
during the scenario.  Fournier understood that "house arrest" was
part of the basic training academy course.  He submitted to being
handcuffed, and then returned to the classroom.  We grant that if
he did object to being handcuffed, there could possibly have been
negative consequences for his continued employment as a
corrections officer.  However, the possible effect that refusing
to be handcuffed may have had on his employment status is not an
issue for us to consider.  Rather, the question is whether a
violation of Fournier's right to be free from seizure occurred.  
In view of all the circumstances surrounding the incident, a
reasonable observer would conclude that Fournier was the subject
of improper hazing, which might give rise to a state law claim
based on tort or employment theories, but would not believe that
Fournier was not free to call an end to the "house arrest" and
have the handcuffs removed.
         B.   Fourteenth Amendment Due Process Claims
         The Fourteenth Amendment states that a "State [shall not] deprive
any person of life, liberty, or property, without due process of
law . . . ."  U.S. Const. amend. XIV.  Due process claims may
take either of two forms:  "procedural due process" or
"substantive due process."  Pittsley v. Warish, 927 F.2d 3, 6
(1st Cir. 1991).  Procedural due process requires that the
procedures provided by the state in effecting the deprivation of
life, liberty or property are adequate in light of the affected
interest.  Id.  Substantive due process, however, imposes limits
on what a state may do regardless of what procedural protection
is provided.  Id. (citing Monroe v. Pape, 365 U.S. 167, 171-72
(1961); Rochin v. California, 342 U.S. 165, 169 (1952)).  In this
case, Fournier invokes the latter prong of due process
protection:  (1) by arguing that he had a constitutionally
protected liberty interest in being disciplined only as set forth
in the Essex County Sheriff's Department Training Manual; and (2)
by contending that the county owed him and others similarly
situated a constitutional right to safe conditions and freedom
from bodily restraint.
           1.  Disciplinary Procedure Due Process Claim
         It is well established that a state actor's failure to observe a
duty imposed by state law, standing alone, is not sufficient to
establish a  1983 claim.  See Martnez v. Coln, 54 F.3d 980,
989 (1st Cir. 1995).  Although it is true that constitutional
significance may attach to certain interests created by state
law, not every transgression of state law does double duty as a
constitutional violation.  Id.  As this Court stated in Martnez:
"[T]he Constitution is not an empty ledger awaiting the entry of
an aggrieved litigant's recitation of alleged state law
violations . . . ."  Id.
         Fournier cites Massachusetts law, see  Mass. Gen. Laws ch. 265,  
40, and departmental regulations which govern the discipline of
recruits in training programs, to found his claim of a  1983
violation.  However, whether Massachusetts law was violated or
the department failed to follow its own disciplinary procedures
matters little because neither alleged deficiency establishes a  
1983 violation.   
         2.  Affirmative Obligation Due Process Claim
    The substantive element of the Due Process Clause protects those
rights that are fundamental, rights that are "implicit in the
concept of ordered liberty."  Palko v. Connecticut, 302 U.S. 319,
325 (1937).  The Supreme Court has deemed that most, but not all,
of the rights enumerated in the Bill of Rights are fundamental.  
In addition, certain unenumerated rights, such as the right to
privacy, are deemed fundamental.
    While the Supreme Court has extended substantive due process
protection to certain unenumerated rights, it has not extended
Fourteenth Amendment coverage to many areas.  "Tort law is one
such area that remains largely outside substantive due process
jurisprudence."  Skinner, 62 F.3d at 346 (citing Daniels v.
Williams, 474 U.S. 327, 332 (1986) (noting that the Due Process
Clause "does not purport to supplant traditional tort law in
laying down rules of conduct to regulate liability for injuries
that attend living together in society")) (citations omitted).
    Fournier contends that there is a constitutional right to safe
conditions.  But see  DeShaney v. Winnebago County Department of
Social Services, 489 U.S. 189, 195, 202 (1989) ("The Clause is
phrased as a limitation on the State's power to act, not as a
guarantee of certain minimal levels of safety and security . . .
. A State may, through its courts and legislatures, impose such
affirmative duties of care and protection upon its agents as it
wishes.  But not 'all common-law duties owed by government actors
were . . . constitutionalized by the Fourteenth Amendment.'"  
(quoting Daniels, 474 U.S. at 335)).  Second, Fournier claims his
constitutional right to freedom from bodily restraint was
violated when he was handcuffed.  As discussed above, Fournier's
"house arrest" does not rise to the level of a constitutional
violation.  See supra, at 5-6.  Fournier's Complaint attempts to
conflate an ordinary tort--battery--into a constitutional
violation.  Unfortunately for his cause, not everything is a
federal case.
     3.  Equal Protection Clause Claim
    In a novel, yet utterly misguided attempt at an Equal Protection
Clause claim, Fournier contends: "[The drill instructor] placed
the plaintiff under house arrest because of the plaintiff's
conduct as a recruit.  It is fair to infer that . . . [the drill
instructor] would not have placed a non-recruit under house
arrest for similar conduct."  Appellee's Br. at 13.  We do not
find that such a distinction rises to the level of an Equal
Protection violation.
CONCLUSION
    Because Fournier has not been able to show a violation of a
federal right, it is not necessary for this Court to reach the
defense of qualified immunity.  For the reasons stated in this
opinion, we reverse the judgment of the district court.  Judgment
is issued for the defendant-appellants.

</body>

</html>